**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25 B 3165 |
| | ) | |
| IGOR LIOKUMOVICH, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion to dismiss ("Motion to Dismiss") filed

by Elequin Securities, LLC ("Elequin").  Elequin requests dismissal of this case pursuant to 11

U.S.C. §§ 707(a) and (b).  Igor Liokumovich ("Debtor") filed a response ("Response"), and

Elequin filed a reply ("Reply").  The court then held an evidentiary hearing on December 16,

2025 (the "Evidentiary Hearing") on the Motion to Dismiss before taking the matter under

advisement.

Elequin argues, under section 707(a), that Debtor filed his case in bad faith and as such

should be dismissed.  Elequin also alleges that while Debtor classified Elequin's claim as a

business debt, it is a consumer debt, making section 707(b) applicable.

Having reviewed the Motion to Dismiss and the papers submitted in support and in

opposition to the Motion to Dismiss, considered the testimony and exhibits and having heard the

arguments of the parties, the court will deny the Motion to Dismiss.

### I.    JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district

court's Internal Operating Procedure 15(a).  This is a core proceeding under 28 U.S.C. §

157(b)(2)(B), (F).  Venue is proper under 28 U.S.C. § 1409(a).

## II.    BACKGROUND

Elequin's claim is based on a Financial Industry Regulatory Authority ("FINRA") Dispute Resolutions Services award (the "Arbitration Award"). (Joint Pre-Hearing Statement, Uncontested Material Facts, ¶ 16, Case No. 25 B 3165, EOD 95.)  The Arbitration Award granted Elequin $673,608, after offsetting the amount awarded to Debtor. (*Id.*)  Debtor's other claims, including a demand that Elequin modify the Form U-5 it filed against Debtor, were denied. (*Id.*)  Debtor was employed as a broker, holding a series 7 license, by Elequin, a FINRA member, and was discharged from employment on January 17, 2023. (*Id.*, ¶¶ 3-5.)  Upon Debtor's termination, Elequin was required to file a Form U-5 pursuant to FINRA regulations. (*Id.*, ¶¶ 6-7.)  Debtor then initiated the FINRA arbitration on September 8, 2023, alleging that Elequin owed him an unpaid bonus and seeking to have Elequin modify the Form U-5 it had filed. (*Id.*, ¶¶ 8-9.)  Elequin filed a counterclaim against Debtor under three theories: faithless servant, breach of confidentiality and restrictive covenants agreement, and breach of fiduciary duty. (*Id.*, ¶ 11.)

The FINRA arbitration spanned nine days consisting of eighteen sessions in addition to seven pre-hearing sessions, resulting in a total of 1,921 pages of transcripts. (*Id.*, ¶ 12.)  The FINRA arbitration panel issued the Arbitration Award on February 7, 2025. (*Id.*, ¶ 15.)  Debtor did not appeal the Arbitration Award and then filed his voluntary chapter 7 petition on February 28, 2025. (*Id.*, ¶¶ 17-18.)

## III.    LEGAL DISCUSSION

Elequin requests dismissal of this bankruptcy case pursuant to 11 U.S.C. §§ 707(a) and (b).  Debtor, in his Response and at the hearing, countered the allegations of both sections and further raised the issue of whether he was properly served with Elequin's Motion to Dismiss.

A.      **Procedural Irregularities Preventing Disposition of Motion**

i.      **Failure to Serve Debtor and Provide Notice to Creditors**

Debtor contends that Elequin improperly served Debtor's counsel with the Motion to Dismiss rather than Debtor himself as required by the bankruptcy rules.  Fed. R. Bankr. P. 1017 and 9014.  Elequin also did not provide sufficient and proper notice of the request to dismiss the case to all creditors.  Fed. R. Bankr. P. 2002(a)(4).  Elequin argued, in its Reply, that out of an abundance of caution, and being mindful of Illinois Rule 4.2 of the Rules of Professional Conduct, it chose to serve Debtor's counsel with the Motion to Dismiss rather than Debtor.  Reply, Case No. 25 B 3165, EOD 79.

First, it is too late for Debtor to assert improper service.  The Motion to Dismiss was initially presented on August 27, 2025, and Debtor did not raise the argument of insufficient service of process at that time.  In fact, prior to the Motion to Dismiss, Elequin initiated multiple contested matters – motion to lift stay, docket 17; motion to extend time to object to discharge, docket 31; objection to exemptions, docket 37.  In each matter, Elequin did not serve the Debtor.  In each matter, the Debtor objected to the substance of the contested matter.  In no prior matter did Debtor object for failure to serve Debtor.  In all matters, like this matter, Elequin served Debtor's counsel.

Debtor's counsel appeared at the initial hearing on the Motion to Dismiss and participated in the pre-hearing status conference where the parties and the court discussed a pre-hearing order and set submission deadlines and a hearing date.  Debtor's counsel appeared "at the initial hearing on the Motion to Dismiss. Debtor's counsel consented on Debtor's behalf to a scheduling order on Elequin's Motion to Dismiss. Debtor's counsel did not raise the service

3

issue at that hearing." Joint Pre-Hearing Statement, ¶ 29, Case No. 25 B 3165, EOD 95. Debtor raised the failure to serve Debtor personally in his written Response to the Motion to Dismiss on September 12, 2025. Response, Case No. 25 B 3165, EOD 63.

Various courts have held that personal service to a debtor is not required when a debtor is represented counsel. *See In re Kramer*, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013) ("In this instance, notwithstanding Harbor's failure to properly serve the Debtor, the Debtor had notice of the Motion [to extend time to object to discharge and dischargeability] through his counsel, had the opportunity to have opposition papers filed timely on his behalf, and had his counsel appear in opposition to the Motion at the April 25 Hearing; thus, the Debtor was not prejudiced by Harbor's failure to comply with Bankruptcy Rule 7004."); *but see Cyrnek v. Oliva* (*In re Oliva*), 591 B.R. 328, 336 (Bankr. N.D. Ill. 2018) (disagreeing with *Kramer* on other grounds).

Additionally, voluntary appearance at a hearing or deposition could be considered a waiver of any objection to lack of service. *See In re Kramer*, 492 B.R. 366 (Bankr. E.D.N.Y. 2013); *see also Jud. Watch, Inc. v. U.S. Dep't of Com.*, 196 F.R.D. 1, 2 (D.D.C. 2000) ("[T]he court finds that by voluntarily appearing at the Washington, D.C. deposition, Trie waived any objection to the subpoena based upon lack of service. Notably, based on the record before the court, Trie made no objection to the document requests based on defective service at the time of the deposition.").

Here, Debtor's counsel appeared at the original presentation of the Motion to Dismiss on August 27, 2025, similar to prior contested matters in which Debtor was not served. Debtor's counsel participated in the pre-hearing scheduling conference, including consenting to pre-hearing submission dates and the hearing date. Debtor's failure to raise such an objection at that time constituted a waiver of objection. It is too late for Debtor to make an argument that he was

4

not properly served with the Motion to Dismiss.

Rule 2002(a)(4) requires that the debtor and all creditors receive twenty-one days' notice of a *hearing* on a motion to dismiss a chapter 11 case. Fed. R. Bankr. P. 2002(a)(4). Here, Elequin presented its Motion to Dismiss on August 27, 2025. The court set a hearing date of October 15, 2025. Case No. 25 B 3165, EOD 52. After Debtor raised service issues in his Response, the hearing was rescheduled to December 16, 2025. Case No. 25 B 3165, EOD 101. Although Elequin disputed that it was obligated to serve all creditors, on October 15, 2025, Elequin gave notice of the December 16, 2025 hearing – more than twenty-one days' notice – to all creditors and provided copies of the parties' Motion to Dismiss, Response, and Reply.

### ii.   Reliance on Illinois Rules of Professional Conduct

Illinois Rule of Professional Conduct 4.2 provides that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Il. R. S. Ct. RPC Rule 4.2. Elequin argues that Rule 4.2 could have prohibited it from serving Debtor with a copy of the Motion to Dismiss. This interpretation is flawed and Elequin cites no published case in support of its position.

In fact, Elequin's interpretation could be read to suggest that service of motions, properly performed in compliance with applicable bankruptcy rules such as Fed. R. Bankr. P. 9014 and Fed. R. Bankr. P. 7004(b)(9), would run afoul of Rule 4.2. Further, the language of Fed. R. Bankr. P. 7004(g) undercuts Elequin's argument: "If, when served, a debtor is represented by an attorney, the attorney must *also* be served by any means authorized by Fed. R. Civ. P. 5(b)." (Emphasis added.) *Compare* Fed. R. Civ. P. 5(b) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on

5

the party.").

Additionally, the ABA Committee on Ethics and Professional Responsibility wrote a formal opinion on Rule 4.2, titled "Communications with Represented Persons."  ABA Formal Op. 95-396.  The Committee discussed the scope of the exception to the rule that allows contact "authorized by law."

> The "authorized by law" exception to the Rule is also satisfied by a constitutional provision, statute or court rule, having the force and effect of law, that expressly allows a particular communication to occur in the absence of counsel -- *such as court rules providing for service of process on a party*[.]

ABA Formal Op. 95-396 at 10 (emphasis added) (citing Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 4.2.109 (1994 Supp.)).  The court's ruling on Debtor's argument regarding failure to personally serve Debtor is limited to the facts of this case and analysis above.

### B.      Dismissal for Cause under Section 707(a)

Section 707(a) provides a court with discretion to dismiss a case after notice and a hearing and only for cause.  Section 707(a) reads:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a).  The list outlined in section 707(a) is not exhaustive.  *In re Schwartz*, 799 F.3d 760, 763 (7th Cir. 2015).  "Cause" for dismissal of a chapter 7 case under section 707(a) embraces conduct that "avoids repayment of debt without an adequate reason."  *Id.*  Succinctly,

an "unjustified refusal to pay one's debts is a valid ground" under section 707(a). *In re Schwartz*, 799 F.3d at 764 (7th Cir. 2015).

Citing section 707(a) and the *Schwartz* decision, Elequin claims that Debtor's case must be dismissed because it was filed in bad faith. Motion to Dismiss, Case No. 25 B 3165, EOD 48. Elequin further asserts that Debtor meets five recognized elements of a bad faith filing: Debtor filed this case solely to avoid Elequin's single large debt, he filed inaccurate schedules which did not reflect monthly income and expenses, his income would allow him to fully pay Elequin in less than 5 years, he has made no attempt to pay any of his debt to Elequin, and this case is a two party dispute between Debtor and Elequin.

The *Schwartz* test is broader than, but can include, a bad-faith test. In fact, the Seventh Circuit has expressly rejected a formalistic bad-faith test permitting dismissal under section 707(a)

> only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*BMO Harris Bank N.A. v. Isaacson*, 551 B.R. 376, 383 (N.D. Ill. 2015) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)). Instead, in the Seventh Circuit, a bankruptcy court may dismiss for cause "wherever there is an unjustified refusal to pay one's debts (or, presumably, for any other number of non-procedural reasons), regardless of whether the debtors' conduct amounts to 'bad faith.'" *BMO Harris Bank N.A. v. Isaacson*, 551 B.R. 376, 383 (N.D. Ill. 2015) (citing *In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015)). Here, Elequin did not present sufficient evidence to support a finding that cause exists to dismiss Debtor's bankruptcy case.

Analyzing the Debtor's conduct under the *Schwartz* standard, the Debtor did not make an unjustified refusal to pay his debt to Elequin. Debtor testified during the Evidentiary Hearing

7

that while Debtor's counsel had offered a partial payment of $150,000 as a settlement to Elequin, it was made clear to Debtor and his counsel that Elequin would not accept any amount other than 100% of the award.  Evid. Tr. 28:352-29:367, Dec. 16, 2025.  Debtor further testified that in response to the Arbitration Award levied against him, he reduced all expenses.  The amounts on his Schedule J are based on historical figures of his expenses.  Evid. Tr. 42:544; 43:551, Dec. 16, 2025.

After discussions with the U.S. Trustee regarding the original Schedules I and J that Debtor filed with his petition, Debtor testified that he and his wife reduced childcare expenses for their children.  Evid. Tr. 80:1039-81:1059, Dec. 16, 2025; Elequin's Ex. 11, Sept. 30, 2025.  Debtor explained that he filed for chapter 7 based on the advice of counsel and that they believed it would provide a better recovery for Debtor's creditors as well as a better outcome for Debtor.  Evid. Tr. 69:901-70:915, Dec. 16, 2025.

Elequin questioned why Debtor did not offer a settlement payment plan.  The failure to offer a settlement payment plan was not to "stiff arm" Elequin or a refusal to pay.  Rather, Debtor's employment situation was not entirely "solid" and thus his ability to perform over time payments seemed uncertain.  Evid. Tr. 117:1522-17:1524, Dec. 16, 2025.  The testimony, while perhaps unsatisfactory to Elequin, does not show that Debtor acted in bad-faith or unjustifiably refused to pay his debts.

"Under FINRA rules, '[a]ll monetary awards shall be paid within 30 days of receipt….' FINRA R. 12904(j), 13904(i). If a broker does not timely pay an award, the broker's license may be suspended or cancelled on 21 days written notice. FINRA R. 9554."  Joint Pre-Hearing Statement, Agreed Material Issues of Law, ¶ 63, Case No. 25 B 3165, EOD 95.  The events leading to the bankruptcy filing were the fear that Debtor would lose his license, either through a

cancellation or suspension, and Debtor was left to either file this case or pay Elequin in full within 30 days pursuant to the Arbitration Award. Evid. Tr. 131:1689-131:1690, Dec. 16, 2025; Response, Case No. 25 B 3165, EOD 63, p. 3. Debtor has explained that he did not believe a settlement was likely based on the communications with Elequin's counsel and thus believed the only next step was to file for bankruptcy. Evid. Tr. 67:826-67:874, Dec. 16, 2025. The court found Debtor's representations and testimony on both points – his fear and his belief – to be credible. Debtor did not unjustifiably refuse to pay the Arbitration Award.

"It is not bad faith to seek to gain an advantage from declaring bankruptcy—why else would one declare it?" *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992). The court finds that Debtor's reasoning and responses are sufficient to overcome Elequin's claim that cause – bad faith or otherwise – exists and the case should be dismissed. Debtor's refusal was justified. Therefore, the Motion to Dismiss on the basis of section 707(a) will be denied.

### C.     Timeliness of Elequin's 707(b) Argument

Elequin further argued in its Motion to Dismiss that Debtor's debts are primarily consumer debts, not business debts, as Debtor had scheduled them, and therefore section 707(b) applies in this case. Motion to Dismiss, Case No. 25 B 3165, EOD 48. Section 707(b) authorizes a bankruptcy judge to dismiss a chapter 7 bankruptcy proceeding for "substantial abuse" and is limited to cases in which the debtor's debts are "primarily consumer debts." 11 U.S.C. § 707(b); *In re Lybrook*, 951 F.2d 136, 138 (7th Cir. 1991) (internal quotations omitted). "The Bankruptcy Code defines consumer debt as mean[ing] debt incurred by an individual primarily for a personal, family, or household purpose." *In re Costantino*, 72 B.R. 189, 192 (Bankr. D.S.C. 1986) (internal quotations omitted).

A motion seeking dismissal under section 707(b) "must be filed within 60 days after

9

the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 1017(e)(2).

The first date set for the meeting of creditors was March 26, 2025. Case No. 25 B 3165,

EOD 6. Elequin did not file its Motion to Dismiss under section 707(b) until August 20,

2025. Motion to Dismiss, Case No. 25 B 3165, EOD 48. The Motion to Dismiss was filed

far beyond the deadline to file a motion for dismissal under section 707(b) and is deemed

untimely. Therefore, the Motion to Dismiss on the basis of section 707(b) will be denied.[1]

### IV.  CONCLUSION

For the reasons stated above, the Motion to Dismiss is denied. The court will enter an

order, consistent with this ruling.

ENTERED:

Date: April 27, 2026

DAVID D. CLEARY
United States Bankruptcy Judge

---

[1] Elequin, in its Reply, points to Debtor's schedules and contends that Debtor listed their debt to Elequin as business debt and therefore the 60-day deadline to file a motion to dismiss would not be applicable. This contradiction undermines Elequin's Motion to Dismiss. The Motion to Dismiss asserts that the debt is a consumer debt and the court must apply section 707(b). But, if the debt is a consumer debt, as Elequin alleges, then the Motion to Dismiss would be untimely. If the debt is business debt, as scheduled by the Debtor, 707(b) does not apply.

10